OPINION OF THE COURT
Bellacosa, J.
The Adirondack Park Agency (APA) has been granted a limited oversight responsibility and review power with respect to zoning variance determinations of local governments within its park land jurisdiction. In affirming the dismissal of the petition to annul the APA’s reversal of the grant of a zoning variance, we hold that the 30-day period within which APA must rule under Executive Law § 808 (3) commences no later than upon APA’s receipt of notice of the variance grant together with the hearing record and other pertinent materials on which it was made. This interpretation of the timing mechanism provision harmonizes interrelated parts of the over-all statutory design and insures that APA review is meaningful and in furtherance of the policies underlying the Adirondack Park Agency Act.
Petitioners own a seven-acre resort with frontage on Basin Bay, Lake George, in the Town of Bolton. They applied on May 19, 1988 for a variance to convert the resort into a 32-unit condominium development. The Bolton Town Zoning
*419 Board of Appeals (ZBA) sent APA notice of the application on May 19 (Executive Law § 808 [3]; 9 NYCRR 582.6 [b]) and granted it on June 13.
On June 16, the APA notified the ZBA that the application was subject to APA review and requested a copy of "the application materials”. APA received notice on June 21 that the application had been granted, together with the following application materials: the first page of the application; an undated narrative description of the proposed development; the recommendation of the Town Planning Board; and two letters in opposition. Although the APA, as a matter of course, requests a copy of hearing minutes from local ZBAs in every case it reviews, no transcript was provided in this case. The APA reversed the ZBA’s variance on July 19, noting that the ZBA had not provided a complete record of the evidence before it. No timely review of the APA determination was sought. Thus, the article 78 proceeding now before us, insofar as it seeks relief with respect to that determination, must be rejected on the threshold ground of untimeliness of the judicial proceeding.
On September 7, the APA was notified that the ZBA would consider petitioners’ revised variance application. The APA received further notice on September 26, without any accompanying materials, that the ZBA had again granted petitioners’ application. After an unheeded oral request, the APA, by letter dated October 7, requested documents concerning the variance, including a site plan of the affected area. The materials were provided on October 24 and the APA then reversed the new ZBA determination on November 14.
Petitioners brought this article 78 proceeding to annul APA’s overturnings of the June and September variances. Supreme Court granted the demanded relief, without opinion. A unanimous Appellate Division reversed and dismissed the petition, and we granted leave to appeal. Petitioners-appellants argue solely that the APA determinations are null as untimely under Executive Law § 808 (3) because they were rendered more than 30 days after the ZBA decisions were made. We are not persuaded and affirm the order of the Appellate Division.
Executive Law § 808 (3) provides: "3. Upon receipt of an application for a variance from any provision of an approved local land use program involving land in any land use area other than a hamlet, including any shoreline restriction, the *420 local government body or officer having jurisdiction thereof shall give written notice thereof to the [Adirondack Park Agency] together with such pertinent information as the agency may deem necessary. If such variance is granted, it shall not take effect for thirty days after the granting thereof. If, within such thirty day period, the agency determines that such variance involves the provisions of the land use and development plan as approved in the local land use program including any shoreline restriction and was not based upon the appropriate statutory basis of practical difficulties or unnecessary hardships, the agency may reverse the local determination to permit the variance. If the agency so acts, the appropriate local government officer or body, as well as any other person aggrieved by such action, shall have standing to have such action reviewed under article seventy-eight of the civil practice law and rules.”
Petitioners assert that, because a granted variance "shall not take effect for thirty days” and the exercise of APA’s review power is keyed to a conditional "if’ clause preceding the "within such thirty day period”, it follows that the 30 days following the local government grant is strictly measured as the sole period of empowerment. Read in vacuum-like isolation with absolute literalness, the statute could be amenable to that construction. However, such a conclusion would be contrary to the purpose and intent of the underlying statutory scheme and would conflict with other operative features of the statute’s core overview procedures, especially the threshold burden of notice and supply of necessary materials for review. Thus, we approach the statute’s provisions sequentially and give the statute a sensible and practical over-all construction, which is consistent with and furthers its scheme and purpose and which harmonizes all its interlocking provisions. It is axiomatic that such an approach is preferred (e.g., Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208), especially when an opposite interpretation would lead to an absurd result that would frustrate the statutory purpose (see, e.g., Matter of Schmidt v Roberts, 74 NY2d 513, 520; Matter of State of New York [Abrams] v Ford Motor Co., 74 NY2d 495, 500; Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 675; New York State Bankers Assn. v Albright, 38 NY2d 430, 437).
The statute begins with the imposition of a triggering burden on the local zoning board: "Upon receipt of an application for a variance * * * the local government body or officer *421 having jurisdiction thereof shall give written notice thereof to the [APA] together with such pertinent information as the agency may deem necessary.” Notification and necessary information for APA to perform its specific and unifying overview review are the principal aims of Executive Law § 808 (3), as evidenced both by its textual primacy (McKinney’s Cons Laws of NY, Book 1, Statutes § 130) and the Legislature’s manifest intent in the Adirondack Park Agency Act (Executive Law art 27). When the statute is read contextually, we discern that the enactors of the statute contemplated and probably preferred that the APA would review local variance grants during the 30-day limbo period, assuming APA has been properly notified and. informed with the necessary materials to do the critical job entrusted to it.
To "preserv[e] the priceless Adirondack Park through a comprehensive land use and development plan,” the Adirondack Park Agency "serve[s] [this] supervening State concern transcending local interests” by "preventing] localities within the Adirondack Park from freely exercising their zoning and planning powers” by reviewing and even undoing zoning variances granted by local governments (Wambat Realty Corp. v State of New York, 41 NY2d 490, 494-495). The APA is charged with an awesome responsibility and the Legislature has granted it formidable powers to carry out its task (see generally, Executive Law art 27). A recent advisory report— already the subject of vibrant debate — concludes that the importance and urgency of the APA’s mission may require even broader powers on its part (see, Report by Commission on Adirondack Park in Twenty-First Century, at 69 [Apr. 1990]). It is inconceivable that the drafters of the present statute, while lessening the customary finality of local government control of the use of land within their own borders, would at the same time deliver back to local regulatory units a frustrative tool to open and close the 30-day APA review "window” by unilateral action or inaction. Thus, despite the skewed and inartful interlock of the statute’s several provisions, the threshold burden remains on the local boards to notify and supply necessary data to the APA. Otherwise, meaningful APA review could be prevented by failing to notify of a variance grant, for example, until the eve of the expiration of the 30-day period or until after it had passed. That would lead to absurd results and would sap the APA of its legislatively delegated authority (see, e.g., Matter of Schmidt v Roberts, 74 NY2d, supra, at 520; Matter of State of New York [Abrams] v *422 Ford Motor Co., 74 NY2d, supra, at 500; Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d, supra, at 675; New York State Bankers Assn. v Albright, 38 NY2d, supra, at 437). Equally frustrative would be the withholding of the relevant record of proceedings upon which to make a meaningful and timely review. If the 30-day period is to be triggered automatically by a variance grant without the threshold, functional prerequisites having been satisfied, the locality’s statutory and regulatory duties to promptly notify and promptly inform the APA would be rendered literally meaningless and useless (Executive Law § 808 [3]; 9 NYCRR 582.6 [b]).
Petitioners argue that extending the 30-day period of review by a commencement date running from the date when the APA has notice and necessary materials creates uncertainty and swings the time pendulum too far in APA’s favor, giving it an opportunity to indefinitely delay the effective date of a variance by merely requesting cumulative or unnecessary materials. Although these are not insignificant concerns and are complicated further by the plain language of the core part of the statute relied on by petitioners, a ready response is available. First of all, the record here shows the opposite. The APA acted properly, promptly and persistently in accordance with its mandate. Moreover, the availability of CPLR article 78 review to challenge any potential manipulation or misuse of the trust reposed in the APA’s vast review and enforcement responsibilities, as well as the advisory APA opinion mechanism for variance applicants (see, 9 NYCRR 582.6 [c]), provide counterbalancing, reasonable remedies and checks and balances. We note finally in this respect that the furnishing to APA of notice and full materials quickly in order to "start the clock” and fix the review period remains always with the local zoning body and property owners.
" '[I]n the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle.’ ” (Ferres v City of New Rochelle, 68 NY2d 446, 451, quoting People v Ryan, 274 NY 149, 152.) The purpose of preserving the Adirondack Park is served not only by a centralized process of review of zoning variances, but by procedural assurances that the reviews will be adequate and meaningfully consistent with statutory prescriptions and prerequisites designed to protect all parties and interests. We therefore read the statute in the progressive order the sen *423 tences were put together and as an integrated procedural package. By doing so, we construe the 30-day time limitation of Executive Law § 808 (3) as commencing no later than on the receipt by the APA of notice of a variance grant, along with necessary materials promptly and reasonably requested by the APA which are pertinent to meaningful review.
The Legislature — on its own initiative or at the instance of the APA, local government units, property owners or other interested persons — may find it appropriate and necessary to reexamine and fine tune the procedural mechanisms of this important land use oversight review protection, especially since the Legislature will no doubt be examining related and transcendent issues involving the' Adirondack Park arising out of the recent, plenary report of the Commission on the Adirondack Park in the Twenty-First Century, dated April 1990.
Accordingly, the order of the Appellate Division should be affirmed, with costs.