█ In the Matter of BRANFORD HOUSE, INC., et al., Appellants, v FELICE MICHETTI, as Commissioner of Housing Preser-

vation and Development of the City of New York, et al., Respondents.—Judgment, Supreme Court, New York County (Karla Moskowitz, J.), entered June 17, 1991, which, in a proceeding pursuant to CPLR article 78, denied petitioners' application to vacate respondents' determination that petitioners pay a surplus prior to dissolution, and dismissed the amended petition, unanimously affirmed, without costs.

In 1963, petitioner Branford House, Inc. (Branford), now dissolved, became a limited-profit housing company (also known as a Mitchell-Lama housing company), organized pursuant to article II of the Private Housing Finance Law. As such, it received a fifty-year, low interest, tax-exempt loan from the New York City Board of Estimate for the construction of a rental apartment building for middle income families in exchange for its promise to remain a limited-profit housing company in the Mitchell-Lama program for a minimum of twenty years prior to filing for dissolution. In 1988, upon learning of Branford's intention to dissolve, respondent New York City Department of Housing Preservation and Development notified Branford that it was required to pay a surplus of $377,074 pursuant to Private Housing Finance Law § 35 (3), which provides, in pertinent part, that prior to dissolution, "payment shall be made of all current operating expenses, taxes, indebtedness and all accrued interest thereon and the par value of and accrued dividends on the outstanding stock of such company", and that "[i]f after making such payments, and after conveyance of the project, a surplus remains in the treasury of the company, such surplus, except in the case of a project aided by a State loan made after May first, nineteen hundred fifty-nine, shall upon dissolution, be paid into the general fund of the municipality which granted tax exemption." Petitioners claim that they are exempt from paying the assessed surplus because the Legislature inadvertently inserted the word "state" before the word "loan" after the statute was recodified in 1961, and therefore erroneously restricted the exemption to those housing companies aided by a State loan (see, L 1960, ch 669; L 1961, ch 803). They also claim that if they are not exempt from the surplus requirement, their mortgage should be deducted in calculating the surplus.

In construing legislative enactments, the court's "role is not to determine the wisdom or propriety of any particular statute, or to correct supposed errors, omissions or defects, but simply and foremost to ascertain and give effect to the intent

of the Legislature and to avoid construing any statute in such a way as to render it ineffective" *(National Org. for Women v Metropolitan Life Ins. Co.,* 131 AD2d 356, 358, *lv dismissed* 70 NY2d 939). Here, without the inclusion of the qualifying word "state," the need for a surplus calculation would be unnecessary. Further, that subdivision (2) does not contain the word "state" is not logically inconsistent inasmuch as it addresses eligibility for dissolution, rather than surplus calculation.

Nor is there merit to petitioners' claim that their mortgage should be considered when calculating the surplus. Read sequentially so as to give the statute "a sensible and practical over-all construction" *(Matter of Long v Adirondack Park Agency,* 76 NY2d 416, 420), subdivision (2) first requires that the mortgage be paid and subdivision (3) thereafter provides that the surplus be calculated. Had the framers intended the subdivisions to be read in unison, they would have combined them. Further, if a mortgage constituted "indebtedness", as petitioners assert (Debtor and Creditor Law § 270), the requirement that all outstanding indebtedness be paid prior to dissolution would render subdivision (2) unnecessary. In addition, it would permit the housing company to benefit twice by utilizing the mortgage for the purposes of dissolution and reduction or elimination of surplus, a use not likely envisioned by a "limited-profit" statute. As the IAS Court found, since there would almost always be an outstanding mortgage indebtedness because of the long-term mortgages extended to housing companies, deduction of that mortgage indebtedness prior to calculating a potential surplus would make it virtually impossible for any housing company to ever have a surplus. Accordingly, the determination of the IAS Court was proper.

We have considered petitioners' other claims and find them to be without merit. Concur—Sullivan, J. P., Milonas, Ellerin and Kassal, JJ.