OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 This proceeding involves a limited-profit (or Mitchell-Lama) housing company, which voluntarily dissolved by prepaying its subsidized mortgage in order to remove the housing project from City regulation and "go private”. The parties dispute the application and interpretation of Private Housing Finance Law § 35. Section 35 provides that, except for projects aided by a State loan, upon dissolution, any surplus in the housing company’s treasury, after accounting for various expenses, obligations and the housing company’s profit, must be paid to the municipality that granted the housing company a tax exemption.
 

 Petitioners raise two arguments. First, despite the limiting language in section 35 (3) indicating that only projects aided by a
 
 State
 
 loan are exempt from the surplus requirement, they contend that their project, which was aided by a non-State loan, is exempt from the surplus requirement because the limiting word "state” was accidentally inserted into section 35 when it was recodified in 1961. Second, petitioners argue that, even if they are not exempt from the surplus requirement, section 35 should be construed so as to permit them to deduct the prepayment of their mortgage debt in calculating their surplus, thereby eliminating any surplus they might have been required to repay. For the reasons that follow, we reject petitioners’ contentions.
 

 I.
 

 In 1963, petitioner Branford House, Inc. (Branford), now dissolved, became a limited-profit housing company under article II of the Private Housing Finance Law. As such, it received a 50-year, low-interest loan from the New York City Board of Estimate and a 30-year exemption from local and municipal taxes for a 159-unit apartment building to be constructed in the Bronx to provide low-rental housing for middle income families. In exchange for the receipt of these financial advantages, Branford promised to remain a limited-profit housing company in the Mitchell-Lama program for a minimum of 20 years before filing for dissolution. In 1989,
 
 *685
 
 after being notified of Branford’s intention to dissolve, respondent New York City Department of Housing Preservation and Development informed Branford that it was required to pay a surplus of $377,074 pursuant to section 35 (3).1 Branford prepaid its mortgage balance of $2,471,095.74 due to the City and conveyed the property to petitioner New Branford, Inc. Petitioners also paid the surplus to respondents under protest. They then commenced this proceeding.
 

 Supreme Court concluded that petitioners owed the surplus. The Appellate Division unanimously affirmed, and rejected petitioners’ claim that the word "state” had been inadvertently inserted into section 35 (3). The Court also concluded that there was no merit to petitioners’ position that the mortgage should be considered when calculating the surplus (187 AD2d 380, 382). We granted petitioners leave to appeal and now affirm.
 

 II.
 

 We first address petitioners’ contention that it is exempt from application of the surplus requirement because the word "state” was inadvertently inserted into Private Housing Finance Law § 35 (3). That section exempts from the surplus requirement those housing companies that were "aided by a
 
 state
 
 loan made after” May 1, 1959 (emphasis added).
 
 [2]
 
 Bran-ford’s project was aided by a loan, made after May 1, 1959, by the City, not the State. Thus, the City’s loan to Branford does not fall within the express language of the statutory exemption from the surplus requirement. Petitioners argue, however, that the insertion of the limiting word "state” before the
 
 *686
 
 word "loan” in the 1961 recodification of the Limited-Profit Housing Companies Law was an inadvertent clerical error, and that section 35 (3) should be applied as if the clerical error had not been made. If the statute is read without the limiting word "state”, inasmuch as the project was aided by "a loan” made after May 1, 1959, it would be exempt from the surplus requirement.
 

 Generally, a court may not assume the existence of legislative error and change the plain language of a statute to make it conform to an alleged intent. However, a court may apply a statute by disregarding a clerical error in legislation so as to make the corrected statute conform to the Legislature’s true intent, if it is established unquestionably that (1) the true legislative intent is contrary to the statutory language, and (2) the mistake is due to inadvertence or clerical error (McKinney’s Cons Laws of NY, Book 1, Statutes § 362;
 
 see, People ex rel. French v Lyke,
 
 159 NY 149, 152-153;
 
 McKee Land & Improvement Co. v Williams,
 
 63 App Div 553, 561,
 
 affd
 
 173 NY 630;
 
 Matter of Deuel,
 
 116 App Div 512, 514-515;
 
 People ex rel. Fitch v Lord,
 
 9 App Div 458).
 

 We first hold that petitioners have failed to meet their burden of establishing without question that the Legislature in the 1961 recodification of section 35 (3) did not intend to restrict the scope of the exemption from the surplus requirement to projects aided by a State loan. On the contrary, the legislative history of section 35 (3) supports equally the conclusion that limiting the surplus exemption to State-aided projects was a considered decision of the 1961 Legislature. Indeed, the Legislature in 1959 so limited the surplus exemption. Although in 1960 it expanded the exemption to projects aided by any loan, in 1961 it again limited the exemption to State-aided projects, just as it had done in 1959.* *
 
 [3]
 
 Petitioners do not offer any persuasive reason why the Legislature’s 1961 amendment should be considered any less deliberate than the ones in 1959 and 1960. Petitioners argue that because the insertion
 
 *687
 
 of the word "state” in 1961 was a substantive change contrary to the 1961 legislative history’s statements that the recodification was intended to be without substantive change, the 1961 amendment should not be given effect. But, such a general statement of legislative intent is not sufficient to meet petitioners’ heavy burden of establishing that the Legislature’s intended meaning was contrary to the plain language of a statute, especially where that language has been left unchanged by the Legislature for over 30 years.
 

 We also conclude that petitioners have failed to establish that the insertion of the word "state” in the 1961 amendment was a clerical error. The claimed error is not the typical mistake in drafting — i.e., a typographical error, misspelling or a transposition of letters or numerals. Rather, the purported error is in the inclusion of a substantive word in the statute. Nothing has been shown about the circumstances surrounding the incorporation of this word that would suggest that it was due to a clerical error in drafting or printing
 
 (cf., People ex rel. French v Lyke,
 
 159 NY 149, 152-153,
 
 supra
 
 [omission of the word "or”];
 
 McKee Land & Improvement Co. v Williams,
 
 63 App Div 553,
 
 affd
 
 173 NY 630,
 
 supra
 
 [reference to chapter 744 rather than chapter 774]). The parties agree that no documentary evidence exists that accounts for the alleged mistake, and petitioners’ attempt to explain it is wholly speculative. Furthermore, the inclusion of the word "state” in section 35 (3) does not create any anomaly in the statute or result in a statutory scheme that is not entirely reasonable
 
 (cf., Matter of Deuel,
 
 116 App Div 512, 514-515,
 
 supra; People ex rel. Fitch v Lord,
 
 9 App Div 458,
 
 supra).
 
 On the contrary, without the inclusion of the limiting word "state”, the exemption would apply to all loans made after May 1, 1959 regardless of source, and thus, in effect, eliminate the surplus requirement. A court should certainly not attribute such a far-reaching result to an alleged clerical error without stronger evidence than petitioners have provided.
 

 III.
 

 Given our conclusion that the surplus requirement of Private Housing Finance Law § 35 (3) applied to Branford, we now address petitioners’ alternative argument that Branford’s mortgage debt should have been included as part of "indebtedness” under section 35 (3) and, thus, should have been deducted in making the surplus calculation. The parties agree that if Branford’s mortgage debt is so deducted, no surplus exists. Section 35 (2), provides, in pertinent part, that a limited-profit housing company may voluntarily dissolve upon
 
 *688
 
 payment in full of its mortgage debt.
 
 [4]
 
 Section 35 (3) further states that before such dissolution, "payment shall be made of all current operating expenses, taxes, indebtedness and all accrued interest thereon and the par value of and accrued dividends on the outstanding stock of such company.” After making such payments, any surplus remaining in the treasury of the housing company shall be paid to the municipality which granted the company a tax exemption.
 

 Petitioners’ claim that its mortgage debt should have been deducted in making the surplus calculation is not persuasive. Read sequentially so as to give section 35 "a sensible and practical over-all construction”
 
 (Matter of Long v Adirondack Park Agency,
 
 76 NY2d 416, 420), subdivision (2) first requires, for a housing company to be eligible for voluntary dissolution, that the mortgage be paid, and subdivision (3) thereafter provides that the surplus be calculated based upon, in part, the payment of any current indebtedness. Petitioners’ contention that the mortgage debt referred to in subdivision (2) is merely one component of the indebtedness referred to in subdivision (3) fails to recognize the different purposes of the two subdivisions. Subdivision (2) establishes the basic criteria which must be met for a housing company to qualify for voluntary dissolution. Subdivision (3) addresses the distinct requirement of calculating any surplus to be paid to the municipality after dissolution and conveyance of the project. If the unpaid mortgage of subdivision (2) constituted "indebtedness” under subdivision (3), as petitioners assert, the requirement of subdivision (3) that all indebtedness be paid before dissolution would render subdivision (2) superfluous to the extent that it requires the unpaid mortgage to be paid before dissolution. A construction rendering statutory language superfluous is to be avoided
 
 (see, Sanders v Winship,
 
 57 NY2d 391, 396; McKinney’s Cons Laws of NY, Book 1, Statutes § 98).
 

 Moreover, petitioners’ interpretation of section 35 would subvert the carefully balanced bargain between the investors and the governmental entities created by the statutory scheme of the Private Housing Finance Law: i.e., the investors agree to a 6% per year limit on the profit they may earn and to be subject to rent regulation while operating as a limited-
 
 *689
 
 profit housing company in return for receiving long-term, low-interest government loans and real estate tax exemptions. Typically after 20 years of providing low-rental housing, the company may "go private” pursuant to section 35 by paying off its mortgage debt and dissolving as a limited-profit housing company. It then may "cash in” its equity in the property by selling, leasing or renting it and thereby realize whatever profit the market will provide
 
 (see, Matter of Columbus Park Corp. v Department of Hous. Preservation & Dev.,
 
 80 NY2d 19, 23-24).
 

 In accordance with the statutory scheme, section 35 (2) offsets a housing company’s long-term mortgage debt against its equity in the property and section 35 (3) separately offsets the housing company’s operating expenses, including "indebtedness”, against its rental income, with any surplus beyond the 6% profit limit to go to the municipality that granted the tax exemption.
 
 [5]
 
 By claiming that the mortgage debt referred to in section 35 (2) is part of the surplus calculation in section 35 (3), petitioners are, in effect, seeking to use any surplus achieved as a limited-profit housing company to pay off the mortgage debt, thereby increasing the investors’ equity in the property. Because surplus represents operating profits beyond the 6% limit, if investors were allowed to retain the surplus in the form of increased equity, they would be exceeding the 6% limit on profits. This would be contrary to the statute’s purpose
 
 (see, Matter of Long v Adirondack Park Agency,
 
 76 NY2d 416, 420,
 
 supra).
 

 In sum, in view of the language, structure and purpose of section 35 of the Private Housing Finance Law, we conclude that a limited-profit housing company’s long-term mortgage debt is not to be considered in calculating the surplus to be repaid under section 35 (3).
 

 The order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Levine concur; Judge Smith taking no part.
 

 Order affirmed, with costs.
 

 . The City later recomputed the amount as $337,191, and later it was reduced to $298,107.
 

 [2]
 

 . Section 35 (3) states: "Upon such dissolution, title to the project may be conveyed in fee to the owner or owners of its capital stock or to any corporation designated by it or them for the purpose, or the company may be reconstituted pursuant to appropriate laws relating to the formation and conduct of corporations, provided, however, that
 
 prior to any such dissolution and conveyance or reconstitution, payment shall be made of all current operating expenses, taxes, indebtedness and all accrued interest thereon and the par value of and accrued dividends on the outstanding stock of such company.
 
 If after making such payments, and after conveyance of the project, a surplus remains in the treasury of the company,
 
 such surplus, except in the case of a project aided by a state loan made after May first, nineteen hundred fifty-nine, shall upon dissolution, be paid into the general fund of the municipality
 
 which granted tax exemption. After such dissolution and conveyance, or such reconstitution, the provisions of this article shall become and be inapplicable to any such project and its owner or owners and any tax exemption granted with respect to such project pursu
 
 *686
 
 ant to section thirty-three hereof shall cease and terminate” (emphasis added).
 

 [3]
 

 . Section 35’s predecessor originally did not exempt any projects from the surplus requirement (L 1956, ch 877, § 22). In 1959 the Legislature created an exemption to the surplus requirement and that exemption was limited to projects aided by a State loan (L 1959, ch 675, § 3). Then in 1960 the Legislature expanded the exemption from the surplus requirement to projects aided by "a loan” (L 1960, ch 669, § 4). In 1961, the Legislature recodified the subject statute as Private Housing Finance Law § 35, providing that the exemption from the surplus requirement applied only to "a project aided by a state loan made after” May 1, 1959 (L 1961, ch 803).
 

 [4]
 

 . Section 35 (2) provides: "A company aided by a loan made after May first, nineteen hundred fifty-nine, may voluntarily be dissolved, without the consent of the commissioner or of the supervising agency, as the case may be, not less than twenty years after the occupancy date upon the payment in full of the remaining balance of principal and interest due and unpaid upon the mortgage or mortgages and of any and all expenses incurred in effecting such voluntary dissolution.”
 

 [5]
 

 . Section 35 (3), by providing that the par value of, and all accumulated dividends on, the company’s stock be paid before any remaining surplus is paid to the municipality, tries to insure that the investors receive both their original investment and 6% per year profit upon dissolution. In other words, the housing company’s operating profit goes to insuring that the investors receive their original investment, plus 6% per year on that investment, before it goes to the municipality as surplus
 
 (see,
 
 Private Housing Finance Law §24 [1]; § 27 [2]; § 28 [1]).