OPINION OF THE COURT
Thomas D. Nolan, Jr., J.
*196 In this CPLR article 78 proceeding, the question presented is whether the City of Saratoga Springs under Civil Service Law § 159-b must pay its employees for “leaves of absences” to undergo breast cancer screening tests.[1]
In 2002, the Legislature passed and the Governor signed into law section 159-b entitled “Excused leave to undertake a screening for breast cancer” (L 2002, ch 362). This statute affords state officers and employees the right to a “leave of absence” to undergo medical screening tests to detect breast cancer. In 2006, section 159-b was amended to add county employees to the class of benefitted public employees. (L 2006, ch 566.) Then, in 2007, school district and local municipality employees, except those employed by the City of New York (L 2007, ch 111) were added to the benefitted class.
The statute now reads:
“1. Every public officer, employee of this state, employee of any county, employee of any municipality, or employee of any school district shall be entitled to absent himself or herself and shall be deemed to have a leave of absence from his or her duties or service as such public officer or employee of this state, employee of any county, employee of any municipality, or employee of any school district, for a sufficient period of time, not to exceed four hours on an annual basis, to undertake a screening for breast cancer.
“2. The entire period of the leave of absence granted pursuant to this section shall be excused leave and shall not be charged against any other leave such public officer, employee of this state, employee of any county, employee of any municipality, or employee of any school district is otherwise entitled to.”
On October 3, 2007, petitioner took an hour off during the workday from her position in the City’s accounts department to have a mammogram and reported this “leave of absence” on her weekly time report. On October 8, 2007, the City’s payroll department advised petitioner that she would not be paid for the one hour “leave,” but if she wanted to be paid, she could charge the time against her accrued sick, personal or vacation *197 leave time. Petitioner elected to use two hours from her accrued sick leave.[2] On December 10, 2007, the state Civil Service Employees Association Local 1000 (CSEA), on petitioner’s behalf, requested that the City restore those two hours to petitioner’s accrued sick leave, urged that the Civil Service Law § 159-b leave was “to be paid leave,” and asserted that the City had violated the law when it refused to pay petitioner for the one hour “leave.” Then, on January 3, 2008, petitioner filed a notice of claim against the City demanding that two hours be returned to her accrued sick leave.
In this article 78 proceeding, petitioner contends that the Legislature intended, when it enacted and amended section 159-b, that leave to obtain breast cancer screening was “paid” leave. In support of its position, petitioner cites the State Department of Civil Service’s Absence and Leave Manual § 21.12 issued in October 2002, after the enactment of Civil Service Law § 159-b, which states that section 159-b provides “paid” leave up to four hours a year when state officials and employees have a breast cancer screening and then states that “[a]bsence beyond the four hour cap must be charged to leave credits.” In addition, petitioner refers to the legislative Bill Jackets, which contain memoranda from interested parties to the Legislature and Governor concerning section 159-b, as additional support for her position that the Legislature indeed had considered the fiscal impact that a “paid” leave would have on the state and local governments before it enacted and later amended section 159-b. For example, in 2002, the State Division of the Budget, the Governor’s Office of Employee Relations, and the State Department of Civil Service submitted memoranda opposing section 159-b’s enactment and cited, among other reasons, the annual cost of lost time to the State and ample existing annual and sick leave for medical testing (Bill Jacket, L 2002, ch 362). Then, when the 2006 amendment authorizing leave for county employees was under consideration, the State Budget Division again, in opposing expanding the reach of section 159-b, asserted the added cost to counties amounted to a new state-imposed unfunded mandate on local governments (Bill Jacket, L 2006, ch 566). Again, when the 2007 amendment extending application to school districts and local governments was under review, the State Budget Division *198 recommended that the Governor veto the amendment since every time this leave benefit was used, a local government would lose, on average, $93 worth of employee work time (Bill Jacket, L 2007, ch 111). The New York State Association of Counties, as reflected in the Bill Jackets, also consistently opposed the law for many reasons including the additional costs to local governments.
In support of their position that Civil Service Law § 159-b did not require that an employee be “paid” for leave taken for breast cancer screening, the respondents point to the wording of the statute and its legislative history. Respondents first note that the statute specifies only that the leave be excused and not charged against any other leave categories and does not expressly state whether such leave was to be paid or unpaid. To bolster this interpretation, respondents contrast two other state statutes, Civil Service Law §§ 82-b and 151, which grant leaves to state employees who participate in disaster relief operations and to all public employees who participate in athletic competitions such as the Olympics and Pan American Games, and specifically provide that such leaves be paid leaves. Respondents also cite other documents in the Bill Jackets, specifically an Assembly produced “bill summary” which states that extending the breast cancer and prostate leave provisions to municipal and school district employees would have “no” fiscal implication for the local governments, as further evidence that the section 159-b leave was intended to be unpaid leave, but that the employee could be paid, at their election, by requesting the time be charged against existing leave accruals (Bill Jackets, L 2002, ch 363, L 2006, ch 566, L 2007, ch 111).
The law which governs the court’s role in interpreting legislation was recently summarized in Matter of Monroe County Pub. School Dists. v Zyra (51 AD3d 125, 130 [4th Dept 2008]) as follows:
“[0]ur task is to ‘ascertain and give effect to the intention of the Legislature’ (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a]; see Riley v County of Broome, 95 NY2d 455, 463 [2000]). ‘The statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning’ (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). Nevertheless, ‘ “inquiry must be made of the spirit and purpose of the legislation, which requires exam *199 ination of the statutory context of the provision as well as its legislative history” ’ (Mowczan v Bacon, 92 NY2d 281, 285 [1998], quoting Matter of Sutka v Conners, 73 NY2d 395, 403 [1989]). Further, we must afford ‘the statute a sensible and practical over-all construction, which is consistent with and furthers its scheme and purpose and which harmonizes all its interlocking provisions’ (Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420 [1990]). Moreover, ‘it is well settled that courts should construe [a statute] to avoid objectionable, unreasonable or absurd consequences’ (Long v State of New York, 7 NY3d 269, 273 [2006]), and also to avoid rendering any of its language superfluous (see Matter of Branford House v Michetti, 81 NY2d 681, 688 [1993]).”
Civil Service Law § 159-b simply does not expressly state whether or not the excused “leave of absence” it authorizes is paid or unpaid. The text simply does not answer the question posed in this proceeding. Thus, the court must look to the overall impact of the statute and consider the purpose for which the Legislature enacted it — namely, to encourage employees to be screened for breast cancer to increase the chances of early detection and treatment and better outcomes for those afflicted with the disease and to reduce medical costs over the long term (Sponsor’s Mem, Bill Jacket, L 2006, ch 566). Respondents’ interpretation, though plausible, does not further the law’s principal goal of encouraging public sector employees to be regularly screened for breast cancer. Certainly, the screening leave was not intended to result in any financial detriment to the employee. Moreover, the New York State Department of Civil Service’s interpretation is that the statute provides for paid leave for New York State officers and employees. The legislative history is clear that the cost of implementing and then expanding section 159-b was raised prior to passage. The sensible and practical construction of section 159-b is that the Legislature intended not only that annual leave would be excused and not be charged against any other leave, but also, that it would be a “paid” leave.
Two recent trial level courts agree with this interpretation, Matter of Cruz v Wappingers Cent. School Dist. (Sup Ct, Dutchess County, July 14, 2008, Brands, J., index No. 2197/08) and Matter of Fringuello v Wappingers Cent. School Dist. (Sup Ct, Dutchess County, July 15, 2008, Dolan, J., index No. 2231/ 08).
*200 Thus, respondents’ determination to deny petitioner a one-hour paid leave of absence is arbitrary and capricious and cannot stand.
The petition is granted, without costs, and the respondents are directed to credit two hours to petitioner’s sick leave accruals.

. Although the petition is restricted to section 159-b, a companion statute, Civil Service Law § 159-c, authorizes employee leaves to obtain prostate cancer screening tests.

. The City’s collective bargaining agreement with CSEA Local 1000 City Hall unit requires a minimum two hour charge of sick leave.