This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 118
In the Matter of Jamie J.

Wayne County Department of Social
Services,
          Respondent;
Michelle E.C.,
          Appellant.

          Katharine F. Woods, for appellant.
          Gary Lee Bennett, for respondent.
          James S. Hinman, for interested parties James R. et al.
          Sean D. Lair, for the child.
          Lawyers for Children, Inc. et al., amici curiae.

WILSON, J.:

          This case presents the novel question of whether Family Court retains subject matter jurisdiction to conduct a permanency hearing pursuant to Family Court Act (FCA) article 10-A once the underlying neglect petition brought under article 10 of that statute has been dismissed for failure to prove neglect.  We hold

- 1 -

that it does not.  Instead, the dismissal of a neglect petition terminates Family Court's jurisdiction.

                          *   *   *

        As Chief Judge Kaye explained,

        "New York's foster care scheme is built
        around several fundamental social policy
        choices that have been explicitly declared by
        the Legislature and are binding on this Court
        . . . A biological parent has a right to the
        care and custody of a child, superior to that
        of others, unless the parent has abandoned
        that right or is proven unfit to assume the
        duties and privileges of parenthood, even
        though the State perhaps could find 'better'
        parents.  A child is not the parent's
        property, but neither is a child the property
        of the State. Looking to the child's rights
        as well as the parents' rights to bring up
        their own children, the Legislature has found
        and declared that a child's need to grow up
        with a normal family life in a permanent home
        is ordinarily best met in the child's natural
        home" (Matter of Michael B., 80 NY2d 299,
        308-309 [1992] [internal quotation marks and
        citations omitted]).[1]

_____

[1] According to amici, those legislative findings are further substantiated by amici's experience and by recent works of social science (see e.g. Kristin Turney and Christopher Wildeman, Mental and Physical Health of Children in Foster Care, 138 Pediatrics 5 [2016] [documenting "vast" differences between the physical and mental health of those children placed in foster care and those in general population, many of which persist even after adjusting for child and household characteristics]; Diane Mastein, Sania Metzger, and Jane Golden, Foster Care and Disconnected Youth: A Way Forward for New York [2013], available at http://www.fysany.org/reports [accessed Oct. 25, 2017] [finding young adults who age out of foster care face particularly poor chances of achieving educational objectives, gaining employment, or developing strong family relations and stable housing arrangements]; Joseph J. Doyle Jr., Child Protection and Child Outcomes: Measuring the Effects of Foster Care, 97 American Economic Review 5:1583 [2007] [suggesting that children on the

Those rights are among our oldest and most fundamental and are not only provided by statute, but also guaranteed to parents and children by our state and federal constitutions (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d 1, 26 [2016]; Matter of Marie B., 62 NY2d 352, 358-359, 465 [1984]; Santosky v Kramer, 455 US 745, 760 [1982]; Bennett v Jeffreys, 40 NY2d 543, 546 [1976]; Stanley v Illinois, 405 US 645, 651 [1972] [collecting cases]).

Here, the rights at issue are those of the subject child, Jamie J., and her mother, Michelle E.C. Jamie J. was born in November 2014. A week later, at the request of the Wayne County Department of Social Services (the Department), Family Court directed her temporary removal from Michelle E.C.'s custody pursuant to an ex parte pre-petition order under FCA § 1022.[2] Four days after that, the Department filed its FCA article 10 neglect petition. More than a year later, on the eve of the fact-finding hearing held to determine whether it could carry its burden to prove neglect, the Department moved to amend its petition to conform the pleadings with the proof. Family Court denied that eleventh-hour motion as unfairly prejudicial to Michelle E.C. and to the attorney for Jamie J. After hearing evidence, Family Court found that the Department failed to prove neglect, and therefore dismissed the petition. The Department

_____

margin of placement tend to have better outcomes when they remain at home]).

[2] Jamie J.'s father's parental rights have subsequently been terminated upon consent.

did not appeal that decision.

Family Court, however, did not release Jamie J. into her mother's custody when it dismissed the article 10 neglect petition.  Instead, at the Department's insistence and over Michelle E.C.'s objection, it held a second permanency hearing, which had been scheduled as a matter of course during the statutorily required first permanency hearing in the summer of 2015.  Family Court and the Department contended that, even though the Department had failed to prove any legal basis to remove Jamie J. from her mother, article 10-A of the FCA gave Family Court continuing jurisdiction over Jamie J. and entitled it to continue her placement in foster care.

Family Court held the second permanency hearing on January 19, 2016.  There, Michelle E.C. argued, as she does here, that the dismissal of the neglect proceeding ended Family Court's subject matter jurisdiction and should have required her daughter's immediate return.  Solely to expedite her appeal of that issue, Michelle E.C. consented to a second permanency hearing order denying her motion to dismiss the proceeding and continuing Jamie J.'s placement in foster care.  The Appellate Division, with two Justices dissenting, affirmed the second permanency hearing order (145 AD3d 127 [4th Dept 2016]) and Michelle E.C. appealed that decision as of right under CPLR 5601 (a).  Her appeal presents a straightforward question of statutory interpretation: does FCA article 10-A provide an independent

grant of continuing jurisdiction that survives the dismissal of the underlying article 10 neglect petition?

Before turning to that question, we first consider whether mootness and preservation issues prevent us from reaching it. During the pendency of this appeal, the second permanency hearing order was superseded by a third, a fourth permanency hearing was scheduled, a proceeding to terminate Michelle E.C.'s parental rights was commenced and stayed pending the result of this appeal, and a second neglect petition was filed. The Department argues this appeal has been rendered moot by those occurrences. However, none of them resolved the conflict between the parties, and each permanency hearing -- docketed under the first neglect petition -- remains subject to the same jurisdictional objection as its predecessor (see Matter of New York State v Michael M., 24 NY3d 649, 657 [2014]). Moreover, even if the appeal were moot, the exception to that doctrine would plainly apply (see generally Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980]). As to preservation, the jurisdictional objection, which may be raised at any time and may not be waived (Lacks v Lacks, 41 NY2d 71, 75 [1976]), was preserved in Michelle E.C.'s letter to Family Court, through her proposed order to show cause, and at the second permanency hearing. Her eventual consent to the second permanency order was expressly understood by all parties and by the court as a means of expediting appellate review, not a waiver of the alleged

defect.  Finally, her due process argument is properly apprehended not as a stand-alone challenge requiring notice to the Attorney-General, but as an invocation, in service of her jurisdictional challenge, of the canon of constitutional avoidance: that is, we should construe the statute, if possible, to avoid the due process infirmity to which she points (see Matter of Jacob, 86 NY2d 651, 668 n 5 [1995]).  On that basis, we proceed to the heart of the parties' disagreement: the interplay between FCA articles 10 (§§ 1011-1085) and 10-A (§§ 1086-1090-a).

Article 10, titled "Child Protective Proceedings," is designed to "establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" and "to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his [or her] needs are properly met" (FCA § 1011).  A child is "neglected" if that child's "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of [a] parent or other person legally responsible for his [or her] care to exercise a minimum degree of care" (id. § 1012 [f] [i]).

An article 10 proceeding is commenced by the filing of a neglect and/or abuse petition by the relevant child protective agency or another person (id. §§ 1031 [a], 1032).  However, even before a petition is filed, Family Court may temporarily remove a

child who, inter alia, "appears so to suffer from the abuse or neglect of his or her parent or other person legally responsible for his or her care that his or her immediate removal is necessary to avoid imminent danger to the child's life or health" and if there is not enough time to hold a preliminary post-petition hearing (id. § 1022 [a] [i]). In making this determination, Family Court "shall consider and determine in its order whether continuation in the child's home would be contrary to the best interests of the child" (id. § 1022 [a] [iii]).  It must also determine that "reasonable efforts were made prior to the date of application for the order directing such temporary removal to prevent or eliminate the need for removal" or that "the lack of such efforts was appropriate under the circumstances" (id.).  If a child is removed under this section, a neglect petition must be filed within three days, except for good cause shown, and a permanency hearing scheduled (id. §§ 1022 [b]; 1027 [h]).

For that neglect petition to be sustained, the child protective agency must prove neglect by a preponderance of the competent, material, and relevant evidence (id. §§ 1046 [b]; 1051 [a]).  If the petition contains allegations that do not conform to the proof of neglect, Family Court may amend the petition provided the parent retains reasonable time to prepare an answer to the amended allegations (id. § 1051 [b]).  If the agency carries its burden, Family Court must sustain the petition and

hold a dispositional hearing, at the conclusion of which it may,
inter alia, suspend judgment, release the child to parental
custody under an order of supervision, enter an order of
protection, or place the neglected child in foster care (id. §§
1052-1057).  If the agency fails to carry its burden, Family
Court must dismiss the petition (id. § 1051 [c]).

Article 10-A, "Permanency Hearings for Children Placed
Out of Their Homes," exists "to provide children placed out of
their homes timely and effective judicial review that promotes
permanency, safety and well-being in their lives" (id. § 1086).
Enacted in 2005, it establishes a system of "permanency hearings"
for children who have been removed from parental custody.  Prior
to each hearing, scheduled at six-month intervals beginning at
the expiration of an initial eight-month window (id. § 1089 [a]
[i] [2]), the child protective agency proffers a sworn report
that recommends a "permanency goal" for the child, which may be
reunification with the parent, adoption, or another goal (id. §§
1087 [e]; 1089 [c]).  At the conclusion of each hearing, Family
Court enters an order of disposition, schedules a subsequent
hearing, and may also consider whether the permanency goal should
be approved or modified (id. § 1089 [d]).  Those determinations
must be made "in accordance with the best interests and safety of
the child, including whether the child would be at risk of abuse
or neglect if returned to the parent" (id.).  Regardless of the
determination, once a child has been placed in foster care

pursuant to certain sections of the Social Services Law or of FCA articles 10 and 10-C (Destitute Children), "the case shall remain on the court's calendar and the court shall maintain jurisdiction over the case until the child is discharged from placement and all orders regarding supervision, protection or services have expired" (id. § 1088).

Here, the Department seizes on a hyperliteral reading of section 1088, divorced from all context, to argue that Family Court's pre-petition placement of Jamie J. under section 1022 triggered a continuing grant of jurisdiction that survives the eventual dismissal of the neglect petition. In other words, even if the Family Court removes a child who has not been neglected or abused, it has jurisdiction to continue that child's placement in foster care until and unless it decides otherwise. Section 1088's place in the overall statutory scheme, the legislative history of article 10-A, and the dictates of parents' and children's constitutional rights to remain together compel the opposite conclusion: Family Court's jurisdiction terminates upon dismissal of the original neglect or abuse petition.

Section 1088 and article 10-A must be construed not in isolation, but (as the "-A" implies) together with the other provisions of the FCA on which their triggering facially depends (see id.; Long v Adirondack Park Agency, 76 NY2d 416, 420 [1990] [courts should not adopt "vacuum-like" readings of statutes in "isolation with absolute literalness" if such interpretation is

"contrary to the purpose and intent of the underlying statutory scheme and would conflict with other operative features of the statute's core overview procedures"]). Article 10 erects a careful bulwark against "unwarranted state intervention into private family life," for which its drafters had a deep concern (Nicholson v Scoppetta, 3 NY3d 357, 369 [2004]; see FCA § 1011), and is particularly adamant that reasonable efforts be made to prevent the need for the removal of a child (id. § 1052 [b] [i] [A]). Neglect findings cannot be casually issued, but require proof of actual or imminent harm to the child as a result of a parent's failure to exercise a minimum degree of care (id. § 1012 [f]). "This prerequisite . . . ensures that the Family Court, in deciding whether to authorize state intervention, will focus on serious harm or potential harm to the child, not just on what might be deemed undesirable parental behavior. 'Imminent danger' . . . must be near or impending, not merely possible" (Nicholson, 3 NY3d at 369).

As the dissenting Appellate Division justices correctly noted, adopting the Department's interpretation of section 1088 would permit a temporary order issued in an ex parte proceeding to provide an end-run around the protections of article 10. Permanency hearing determinations are based not on the elevated "imminent harm" standard of article 10, but "in accordance with the best interests and safety of the child" under article 10-A (FCA § 1089 [d]). Allowing a separate jurisdictional expressway

for the placement of a child to substitute for the manner in which article 10 expects that threshold determination to be reached would subvert the statutory scheme.[3]

As we held in Matter of Tammie Z., "if abuse or neglect is not proved, the court must dismiss the petition . . . at which time the child is returned to the parents" (66 NY2d 1, 4-5 [1985]).  Nothing in the legislative history of article 10-A suggests that its drafters intended to overturn the long-established rule, promulgated by pre-2005 decisions of this Court and of the Appellate Division, that the dismissal of a neglect petition divests Family Court of jurisdiction to issue further orders or impose additional conditions on a child's release (see id.; Matter of Edwin SS., 302 AD2d 754 [3d Dept 2003]; Matter of Amanda SS., 284 AD2d 588 [3d Dept 2001]; Matter

---

[3] The Department's interpretation would create a further anomaly: according to the Department, Family Court's continuing jurisdiction under article 10-A turns on the fortuity of whether the neglect petition is adjudicated before or after the statutorily required first permanency hearing.  Under that interpretation, Family Court has continuing jurisdiction here only because it failed to hold the fact-finding hearing for more than a year after removal; had it held that hearing during the first seven months following Jamie J.'s removal, the Department concedes no continuing jurisdiction would exist under its interpretation of section 1088.  Having the court's jurisdiction and a family's welfare turn on the vagaries of a court's congested calendar would be not only arbitrary and unlikely to comport with legislative intent, but also out of step with our precedents (see Matter of Sanjivani K., 47 NY2d 374, 381 [1979] [holding a neglect finding could not be based on a prolonged separation when that separation was due to the slow pace of litigation commenced by the child protective agency]).

of Brandon C., 237 AD2d 821 [3d Dept 1997]; Matter of Melissa B.,
225 AD2d 452 [1st Dept 1996]; Matter of Anthony YY., 202 AD2d 740
[3d Dept 1994]; Matter of Maria L., 152 AD2d 466 [1st Dept 1989];
Matter of Rasha B., 139 AD2d 962 [4th Dept 1988]); Matter of Dina
V., 86 AD2d 875 [2d Dept 1982]; see also Matter of Adoption of
L., 61 NY2d 420, 427 [1984] ["For once it is found that the
parent is fit . . . the inquiry ends and the natural parent may
not be deprived of the custody of his or her child"]).

Instead, that history demonstrates that the drafters
intended only to correct a technical issue that plagued article
10 and threatened the State's continued access to federal funding
under Title IV of the Social Security Act: Family Court's need to
constantly reassert jurisdiction after a child had been
determined to be the victim of neglect or abuse.  As the
Sponsor's Memorandum noted, under then-current law,

> "After the initial finding of abuse or
> neglect, even where the child is placed in
> foster care and orders are issued regarding
> the respondent parents, the Court's
> jurisdiction over the parties ends with the
> order of disposition. Any other action
> necessary to pursue return of the child home,
> including holding permanency hearings for
> court review of the permanency plan for the
> child, requires the filing of a new petition
> and delay occasioned by the calendaring of
> that petition . . . [S]ervice upon the
> respondents must be effected for each new
> petition before the Court may address the
> gravamen of the petition, although the Court
> previously established jurisdiction over
> those parties at the initiation of the
> original proceeding" (NY Sponsors Memorandum,
> Statement in Support of 2005 SB S5805
> [2005]).

That technical fix served a practical goal: to "reduce by months the time a child spends in foster care" (id.).  Far from accomplishing this goal, the Department's interpretation of section 1088 would instead indefinitely prolong a child's placement outside the home.

Finally, the state intrusion into family matters licensed by the Department's interpretation of section 1088 would infringe the constitutional rights of both parents and children. As Justice Marshall explained, "[w]e have little doubt that the Due Process Clause would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest" (Quilloin v Walcott, 434 US 246, 255 [1978] [citations omitted]).  Sensitive to that concern, this Court has provided a list of the constitutionally permissible showings of "overriding necessity" that would justify the removal of a child from a parent or parents (Matter of Marie B., 62 NY2d at 358).  That list includes "abandonment, surrender, persisting neglect, unfitness or other like behavior evincing utter indifference and irresponsibility to the child's well-being" -- and excludes the child's best interests (id.).  Here, application of the canon of constitutional avoidance leads us to reject the Department's interpretation of section 1088 as providing Family Court jurisdiction when the Department has failed to prove

neglect or abuse.

Taken together, those arguments from the statutory scheme, legislative history, and canon of constitutional avoidance demonstrate that Family Court cannot continue with an article 10-A permanency hearing once it has dismissed the underlying article 10 neglect petition. Accordingly, we hold that the dismissal of a neglect petition operates to discharge a child from placement, terminate all orders regarding supervision, protection or services docketed thereunder, and extinguish the court's jurisdiction over the matter.

That result harms neither Jamie J. nor future children in equally tragic circumstances. As to Jamie J., the Department remains free to take steps to place her in foster care, if warranted, including pursuing a section 1027 order under the second neglect petition. As to future children, the Department and those children's attorneys remain free to take all the steps the petitioners abjured or belatedly pursued here, including moving more quickly to conform the pleadings to the proof, appealing the petition's dismissal, or filing an additional petition.

Accordingly, the Appellate Division order should be reversed, without costs, and the January 26, 2016 permanency order vacated.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed, without costs, and the January 26, 2016 permanency order vacated.  Opinion by Judge Wilson.  Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Feinman concur.

Decided November 20, 2017