Matter of Jefferson C.-A. (Carlos T.-F.) (2024 NY Slip Op 02701)

Matter of Jefferson C.-A. (Carlos T.-F.)

2024 NY Slip Op 02701

Decided on May 15, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
PAUL WOOTEN
BARRY E. WARHIT
LOURDES M. VENTURA, JJ.

2022-07832
 (Docket Nos. N-5658-21, N-5659-21)

[*1]In the Matter of Jefferson C.-A. (Anonymous). Suffolk County Department of Social Services, respondent; Carlos T.-F. (Anonymous), appellant. (Proceeding No. 1)
In the Matter of Stephanie C.-A. (Anonymous). Suffolk County Department of Social Services, respondent; Carlos T.-F. (Anonymous), appellant. (Proceeding No. 2) 

Powers Law, P.C., West Islip, NY (Jennifer S. Lippmann of counsel), for appellant.
Christopher J. Clayton, County Attorney, Riverhead, NY (Jayne M. St. James of counsel), for respondent.
Beth A. Rosenthal, Deer Park, NY, attorney for the children.

DECISION & ORDER
In related proceedings pursuant to Family Court Act article 10, the father appeals from an order of fact-finding of the Family Court, Suffolk County (Caren Loguercio, J.), dated September 14, 2022. The order of fact-finding, after a fact-finding hearing, found that the father neglected the subject children.
ORDERED that the order of fact-finding is reversed, on the facts, without costs or disbursements, the petition is denied, and the proceedings are dismissed.
On May 7, 2021, while executing a search warrant, police officers from the Suffolk County Police Department discovered cocaine within a bedroom of an apartment in a house in Huntington Station. The father resided in the apartment with the mother and the subject children, who were born in 2016 and 2019. Days later, the Suffolk County Department of Social Services (hereinafter DSS) commenced these proceedings pursuant to Family Court Act article 10, alleging that the father neglected the children by possessing the cocaine and storing it in a location where "the children had easy access to it." In an order of fact-finding dated September 14, 2022, made after a fact-finding hearing, the Family Court found that the father neglected the children. The father appeals.
"At a fact-finding hearing in a child protective proceeding pursuant to Family Court Act article 10, the petitioner has the burden of establishing that the subject child has been abused or neglected by a preponderance of the evidence" (Matter of Kamaya S. [Zephaniah S.], 218 AD3d 590, 592 [internal quotation marks omitted]). "To establish neglect of a child, the petitioner must demonstrate, by a preponderance of the evidence, (1) that the child's physical, mental, or emotional [*2]condition has been impaired or is in imminent danger of becoming impaired, and (2) that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Matter of Chloe. P.-M. [Martinique P.], 220 AD3d 783, 784 [internal quotation marks omitted]). "Article 10 erects a careful bulwark against unwarranted state intervention into private family life, for which its drafters had a deep concern" (Matter of Jamie J. [Michelle E.C.], 30 NY3d 275, 284 [internal quotation marks omitted]). "[T]he court is not required to wait until a child has already been harmed before it enters a finding of neglect" (Matter of Kiemiyah M. [Cassiah M.], 137 AD3d 1279, 1279). However, "[n]eglect findings cannot be casually issued" and, instead "require proof of actual or imminent harm to the child as a result of a parent's failure to exercise a minimum degree of care" (Matter of Jamie J. [Michelle E.C.], 30 NY3d at 284). The requirement of "[a]ctual or imminent danger of impairment [a]s a prerequisite to a finding of neglect . . . ensures that the Family Court, in deciding whether to authorize state intervention, will focus on serious harm or potential harm to the child, not just on what might be deemed undesirable parental behavior" (Matter of Zahir W. [Ebony W.], 169 AD3d 909, 909-910 [internal quotation marks omitted]). "In order for danger to be 'imminent,' it must be 'near or impending, not merely possible'" (Matter of Serina M. [Edward M.], 179 AD3d 925, 927, quoting Nicholson v Scoppetta, 3 NY3d 357, 369).
Based upon these standards, a court may issue a finding of neglect in various circumstances involving the possession, use, or sale of illegal narcotics. For example, such a finding may be warranted where there is "proof of a parent's repeated drug use" in a manner sufficient to constitute "prima facie evidence of neglect" pursuant to Family Court Act § 1046(a)(iii) (Matter of Camila G.C. [Matthew C.], 211 AD3d 934, 935; see Matter of Jesse W. [Jesse W.], 189 AD3d 848, 849-850). Further, evidence demonstrating that a parent stored drugs within the home in a location that was "readily accessible" to a child may be sufficient to support a finding of neglect (Matter of Jaielly R.H. [Kimberly V.], 132 AD3d 993, 993; see Matter of Majesty M. [Brandy P.], 166 AD3d 775, 776; Matter of Sarah A. [Daniel A.], 109 AD3d 467, 467). Similarly, a neglect finding may be based upon evidence establishing that a parent exposed a child "to the very dangerous activity of narcotics trafficking" (Matter of Majesty M. [Brandy P.], 166 AD3d at 776; see Matter of Paul J., 6 AD3d 709, 710; Matter of Michael R., 309 AD2d 590, 590-591), including, inter alia, evidence that the parent "packaged and sold narcotics in the presence of the child[ ]" (Matter of Paul J., 6 AD3d at 710; see Matter of Michael R., 309 AD2d at 590-591), "resided with the child in a home in which narcotics transactions were taking place" (Matter of Diamonte O. [Tiffany R.], 116 AD3d 866, 867; see Matter of Essleiny A. [Rafael A.], 142 AD3d 862, 862; Matter of Sarah A. [Daniel A.], 109 AD3d at 467), or "travel[ed] with the child[ ] to an arranged drug transaction" (Matter of Evan E. [Lasheen E.], 95 AD3d 1114, 1114; see Matter of Eliani M.-R. [Sonia M.], 172 AD3d 636, 636). By contrast, a parent's "mere use of illicit drugs," without more, "is insufficient to support a finding of neglect" (Matter of Delanie S. [Jeremy S.], 165 AD3d 1639, 1639; see Matter Anastasia L.-D. [Ronald D.], 113 AD3d 685, 688; Matter of Anastasia G., 52 AD3d 830, 831). Nor will the presence of illicit drugs in the home where the child resides be sufficient, standing alone, to support a finding of neglect (see Matter of Charisma D. [Sandra R.], 67 AD3d 404, 405; cf. Matter of Brad I. [Brad J.], 117 AD3d 1242, 1244-1245). In either scenario, a neglect finding will not be warranted absent evidence that the child suffered the requisite impairment, or that he or she was in imminent danger of suffering such impairment, as a result of the parent's conduct (see Nicholson v Scoppetta, 3 NY3d at 369; Matter of Zahir W. [Ebony W.], 169 AD3d at 909-910).
Here, the Family Court's finding that the father neglected the children was not supported by a preponderance of the evidence (see Matter of Charisma D. [Sandra R.], 67 AD3d at 405; see generally Matter of Kingston T. [Diamond T.], 209 AD3d 743, 745; Matter of Nabil H.A. [Vinda F.], 195 AD3d 1012, 1012). Initially, contrary to the father's contention, the record contained sufficient evidence for the court to infer that he intended to sell the cocaine that the officers found in his apartment, which weighed approximately four ounces. Nonetheless, his intent to sell these illicit drugs was insufficient, without more, to warrant a finding of neglect. The record, for example, contained no evidence establishing that the father engaged in drug transactions within the house or that he otherwise exposed the children to drug-trafficking activities (cf. Matter of Diamonte O. [Tiffany R.], 116 AD3d at 867; Matter of Evan E. [Lasheen E.], 95 AD3d at 1114; Matter of Paul J., 6 AD3d at 710). Nor was there evidence adduced at the hearing as to whether the father regularly engaged in the sale of drugs, or the manner in which he intended to sell the cocaine. [*3]Moreover, although the officers discovered the cocaine within the father's bedroom closet, it was located on a five- or six-foot-high shelf and was otherwise stored in a manner that was not readily accessible to the children (see Matter of Majesty M. [Brandy P.], 166 AD3d at 776; cf. Matter of Jaielly R.H. [Kimberly V.], 132 AD3d at 993). Finally, there was no indication in the record that the father ever used cocaine or any other illicit drugs. Absent evidence that the father's conduct caused the requisite harm to the children or otherwise placed them in imminent danger of such harm, the court should not have found that he neglected them (see Matter of Jamie J. [Michelle E.C.], 30 NY3d at 284; Nicholson v Scoppetta, 3 NY3d at 369; Matter of Chaim R. [Keturah Ponce R.], 94 AD3d 1127, 1130).
In light of our determination, we need not reach the father's remaining contentions.
BARROS, J.P., WOOTEN, WARHIT and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court