Matter of R.C. (D.C.--R.R.) (2025 NY Slip Op 01859)

Matter of R.C. (D.C.--R.R.)

2025 NY Slip Op 01859

Decided on March 27, 2025

Appellate Division, First Department

Gesmer, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 27, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Ellen Gesmer Martin Shulman LlinÉt M. Rosado Kelly O'Neill Levy

Index No. NN-10177/19 V-00786/23|Appeal No. 3836|Case No. 2024-01609|

[*1]In the Matter of R.C., A Child Under Eighteen Years of Age, etc., D.C., Respondent-Appellant, R.R., Respondent-Respondent, Administration for Children's Services, Petitioner-Respondent.

Respondent D.C. appeals from an order of the Family Court, New York County (Keith E. Brown, J.), entered on or about January 24, 2024, which, following a dispositional hearing on the neglect case against respondent putative father, continued the child's placement in foster care until the conclusion of the next permanency planning hearing rather than returning the child to respondent mother, and dismissed the mother's petition for a writ of habeas corpus.

Andrew J. Baer, New York, for appellant.
Muriel Goode-Trufant, Corporation Counsel, New York (Mackenzie Fillow and Melanie T. West of counsel), for Administration for Children's Services, respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Judith Stern of counsel), attorney for the child.

Gesmer, J. 

Respondent D.C. appeals from an order of the Family Court, New York County (Keith E. Brown, J.), entered on or about January 24, 2024, which, following a dispositional hearing on the neglect case against respondent putative father, continued the child's placement in foster care until the conclusion of the next permanency planning hearing rather than returning the child to respondent mother, and dismissed the mother's petition for a writ of habeas corpus.
Andrew J. Baer, New York, for appellant.
Muriel Goode-Trufant, Corporation Counsel, New York (Mackenzie Fillow and Melanie T. West of counsel), for Administration for Children's Services, respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Judith Stern of counsel), attorney for the child.
Gesmer, J. On August 21, 2019, approximately two weeks after R.C. was born, the Administration for Children's Services (ACS) filed a petition alleging that R.C. resided with the mother, the putative father lived elsewhere, and that the mother and putative father had neglected the child.[FN1] By order dated January 13, 2020, following an ex parte hearing pursuant to Family Court Act article 10, § 1027, Family Court ordered the temporary removal of the child from the mother's care for her purported failure to "enforce" the order of protection against the putative father,[FN2] and scheduled a date for a permanency hearing pursuant to Family Court Act article 10-A, § 1089. The child has remained in foster care pursuant to that temporary placement with the same non-kinship foster family ever since.
On April 19, 2022, over two and one-half years after the petition was filed, the putative father consented to a finding of neglect against him. Family Court commenced a fact-finding trial on the neglect petition against the mother on the same day. During and prior to the hearing, the mother was only permitted visits with R.C. subject to various conditions imposed by ACS. On June 6, 2022, Family Court found that ACS had failed to prove by a preponderance of the evidence that the mother had neglected the child. Accordingly, the court dismissed the petition as to the mother pursuant to Family Court Act article 10, § 1051(c). The mother's attorney asked that the child be released to the mother's care, noting that she was now a nonrespondent parent and had no neglect charges pending against her. The court did not return R.C. to her mother's care, but rather issued an order that day permitting the mother to have unsupervised visits, without imposing any of the conditions previously required of her. It noted that there was a "very strong possibility" that the court "might be returning [the child] to [her mother]," unless ACS demonstrated "extraordinary circumstances." The court then scheduled the dispositional hearing on the neglect case against the putative father to begin on July 15, 2022. Although the putative father did not appear, the dispositional hearing continued for another 16 months, during which the child remained [*2]in foster care and the mother continued to visit her. On January 25, 2023, the mother filed a writ of habeas corpus, which Family Court consolidated with the neglect proceeding.
On January 24, 2024, Family Court issued the order appealed from, which decided the disposition on the petition against the putative father, made permanency hearing determinations, and dismissed the mother's habeas petition. Specifically, the court continued the child's placement in foster care pending the next permanency hearing; approved the permanency goal for R.C. of "return to parent" with concurrent planning for adoption; directed the foster care agency to refer the mother for intensive mental health services, monitor her compliance with those services, and arrange for visitation between the mother and the child; and ordered the putative father to engage in services, including a batterer's accountability program and parenting class. In addition, the court dismissed the mother's writ of habeas corpus petition on the basis that the child was not "wrongfully detained by ACS. [She] has been removed from her mother's care pursuant to court order." Although ACS had never filed another neglect petition against the mother, the court relied on evidence about incidents involving the mother that occurred after the date of the petition and after dismissal of the petition against her, even though the dispositional hearing only purported to concern the neglect petition as to the father. The mother now appeals. At no time did ACS move to amend the petition against the mother while it was pending against her, nor did the agency file a new neglect petition against her despite proffering evidence of incidents which had occurred after the date of the petition.
Initially, we decline to dismiss the appeal as moot based on the reported issuance of a subsequent permanency hearing order. The determination not to return the child to the mother based on findings that the child would be at significant risk of neglect if returned to her, may indirectly affect the mother's status in future proceedings (see Matter of Tristram K., 25 AD3d 222, 228 [1st Dept 2005]; Matter of Durgala v Batrony, 154 AD3d 1115, 1117 [3d Dept 2017]). Furthermore, for the reasons discussed below, we find that Family Court Acted in excess of its subject matter jurisdiction in continuing the child's placement in foster care and holding further permanency hearings after the article 10 petition was dismissed as against the mother, rather than returning the child to the mother's care.
The mother argues that Family Court lacked subject matter jurisdiction to continue the child's placement in foster care because the putative father has not been adjudicated the child's father. We reject that argument but find that Family Court lacked subject matter jurisdiction to continue R.C.'s foster care placement for the reasons articulated in Matter of Jamie J. (Michelle E.C.) (30 NY3d 275 [2017]), in which the Court of Appeals held [*3]that "Family Court's jurisdiction terminates upon dismissal of the original neglect or abuse petition" (id. at 284).
The "court's lack of subject matter jurisdiction is not waivable, but may be raised at any stage of the action, and the court may . . . on its own motion . . . at any time, when its attention is called to the facts, refuse to proceed further and dismiss the action" (Matter of Brian L. v Administration for Children's Servs., 51 AD3d 488, 500 n 6 [1st Dept 2008] [internal quotation marks and citation omitted], lv denied 11 NY3d 703 [2008]).
Here, once the neglect petition against the mother was dismissed, Family Court lacked subject matter jurisdiction to continue the child's temporary removal from the mother's care and placement in foster care (Jamie J., 30 NY3d at 284-285). Accordingly, it should have immediately returned the child to the mother's care and terminated the child's foster care placement. It erred when it determined that it could hold permanency hearings based on the pending neglect petition against the putative father, since the child was not removed from his care, but from the mother's.[FN3] Indeed, there is no evidence in the record that the child ever resided with the putative father and no indication that he ever sought custody of the child.[FN4]
Furthermore, we find that the failure of Family Court to immediately return the child to the care of the mother after the dismissal of the neglect petition against her—as well as the subsequent protracted proceedings, including the dispositional hearing, which lasted nearly a year and a half—violated her due process rights (see Quilloin v Walcott, 434 US 246, 255 [1978]; Jamie J., 30 NY3d at 282; Matter of Sapphire W., __ AD3d __, 2025 NY Slip Op 00662, *5 [2d Dept 2025]; Matter of Elizabeth C. [Omar C.], 156 AD3d 193, 204 [2d Dept 2017] [failure to provide a parent with a prompt hearing following a child's removal may violate procedural due process]). The purpose of Family Court Act article 10 is twofold: It was designed not only to "establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being," but also "to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his [or her] needs are properly met" (Jamie J., 30 NY3d at 282, quoting Family Ct Act § 1011). "This makes sense, among other reasons, because a child protective agency's involvement with a family may itself have a negative impact on the parent or the child, even if it may be necessary in some circumstances to prevent or repair the effects of abuse or neglect" (Sapphire W., 2025 NY Slip Op 00662, *3). Although Sapphire W. concerns a different section of the Family Court Act than that at issue here, it issued a holding which is highly relevant to this case when it stated that the challenged order "constitute[s] precisely the type [*4]of state intervention that the Legislature sought to avoid in circumstances when it is not warranted" and violated the rights of the mother, a nonrespondent custodial parent (id. at *4).
At the dispositional hearing in this case, Family Court improperly accepted into evidence documents and testimony concerning the mother's mental health status after the date of the neglect petition and after the neglect petition against her had been dismissed and then used it to support continuing the child's foster care placement. Approving that procedure "would permit a temporary order issued in an ex parte proceeding to provide an end-run around the protections of article 10" (Jamie J., 30 NY3d at 284-285). These protections include the parent's right to notice of the claims against them (Family Court Act §§ 1031, 1035), the higher standard for evidence admissible at a fact finding hearing, and ACS's burden to prove neglect by a preponderance of such evidence (Family Court Act § 1046[b]). Moreover,
"[p]ermanency hearing determinations are based not on the elevated imminent harm standard of article 10, but in accordance with the best interests and safety of the child under article 10-A . . . . Allowing a separate jurisdictional expressway for the placement of a child to substitute for the manner in which article 10 expects that threshold determination to be reached would subvert the statutory scheme" (Jamie J., 30 NY3d at 285 [internal quotation marks and citation omitted]).
Family Court rejected the mother's argument that it was required to find extraordinary circumstances in order to continue the child's placement in foster care. We concur with that result, but for a different reason than that articulated by Family Court. The extraordinary circumstances test applies when a nonparent individual seeks custody of a child over the parent's objection (see Matter of Bennet v Jeffries, 40 NY2d 543 [1976]). However, this case deals with the state's intervention in "the child's rights as well as the parents' rights to bring up their own children . . . . Those rights are among our oldest and most fundamental and are not only provided by statute, but also guaranteed to parents and children by our State and Federal Constitutions" (Jamie J., 30 NY3d at 279-280 [citations omitted]). Where the state seeks custody of a child over a parent's objection, it must follow the requirements of article 10, which "erects a careful bulwark against unwarranted state intervention into private family life, for which its drafters had a deep concern" (id. at 284 [internal quotation marks omitted]).
The matter is remanded to Family Court for proceedings in accordance with this order. The matter is further stayed for five days so that the parties may arrange an orderly transition. Should ACS believe that events occurred after the neglect petition against the mother was dismissed which constitute neglect, the agency is free to file a new neglect petition against the mother.
We have considered [*5]the mother's remaining arguments and reject them.
Accordingly, the order of the Family Court, New York County (Keith E. Brown, J.), entered on or about January 24, 2024, which, following a dispositional hearing on the neglect case against respondent putative father, continued the child's placement in foster care until the conclusion of the next permanency planning hearing rather than returning the child to respondent mother, and dismissed the mother's petition for a writ of habeas corpus, should be reversed to the extent that it continued the child's placement in foster care, issued orders and made findings pursuant to Family Court Act §1089, issued orders and made findings as to the mother pursuant to Family Court Act § 1052, and dismissed the mother's habeas petition, and otherwise affirmed, without costs, the matter remanded to the Family Court for further proceedings in accordance with this order, and stayed for five days following entry of this order so that the parties may arrange an orderly transition and take any other appropriate steps.
Order, Family Court, New York County (Keith E. Brown, J.), entered on or about January 24, 2024, which, following a dispositional hearing on the neglect case against respondent putative father, continued the child's placement in foster care until the conclusion of the next permanency planning hearing rather than returning the child to respondent mother and dismissed the mother's habeas petition, unanimously reversed, to the extent that it continued the child's placement in foster care, issued orders and made findings pursuant to Family Ct Act § 1089, issued orders and made findings as to the mother pursuant to Family Ct Act § 1052, and dismissed the mother's habeas petition, and otherwise affirmed, without costs, the matter remanded to the Family Court for further proceedings in accordance with this order and stayed for five days following entry of this order so that the parties may arrange an orderly transition and take any other appropriate steps.
Opinion by Gesmer, J. All concur.
Renwick, P.J., Gesmer, Shulman, Rosado, O'Neill Levy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 27, 2025

Footnotes

Footnote 1: The putative father's name does not appear on the child's birth certificate, and he has not signed an acknowledgment of paternity. The mother testified that she believed he was the child's father. According to the mother's appellate counsel, his paternity petition was dismissed when he failed to appear.

Footnote 2: The petition alleged that the father had punched the mother in the child's presence and that the mother had told a caseworker that he had been violent with her in the past, including during her pregnancy with R.C. Family Court had issued an order of protection directing the putative father to stay away from the mother and R.C. Thus, the mother's inability to "enforce" the order of protection against the putative father became the basis for R.C.'s removal from her mother's care for virtually R.C.'s entire life. That result, particularly to the extent that the child remained in foster care even after the petition asserting the child's exposure to domestic violence as the basis for alleged negligence was dismissed against the mother, was directly contrary to the landmark decision of the Court of Appeals over two decades ago (Nicholson v Scoppetta, 3 NY3d 357, 375 [2004]). Nicholson held, inter alia, that a child's exposure to domestic violence is not presumptively neglect as against the abused parent, is not presumptively grounds for removal of a child from the abused parent's care and that "in many instances removal may do more harm to the child than good" (id. at 375).

Footnote 3: Had the court promptly returned the child upon dismissal of the neglect proceeding against the mother, there would have been no reason to hold a permanency hearing, which is only held while a child is in foster care (Jamie J., 30 NY3d at 283).

Footnote 4: Family Court relied on a Second Department case, Matter of Sabrina M.A. (Yana A.—Marcus S.) (195 AD3d 709 [2d Dept 2021]), which affirmed Family Court's order continuing the child's foster care placement until the next permanency hearing or further order of the court over the objection of the nonrespondent father. However, Sabrina M.A. is distinguishable. There, the child had been temporarily removed from the respondent mother's care and placed in foster care and the neglect petition against the mother was still pending when the father, who lived out of state and had little relationship with the child, intervened in that proceeding. We note that the father had requested a hearing pursuant to Family Court Act § 1028 for release of the child to his care, but that request was not before the Second Department on appeal. We do not view Sabrina M.A. as contravening the Court of Appeals' holding in Jamie J. that Family Court does not retain subject matter jurisdiction over a child's temporary placement in foster care once the Family Court Act article 10 petition has been dismissed against the parent from whose care the child was temporarily removed. To the extent that it does, we decline to follow it. We note that Sabrina M.A. relied on Matter of Eric W. (Tyisha W.) (110 AD3d 1000 [2d Dept 2013]), a case decided before Jamie J. and before the 2015 amendments to article 10 of the Family Court Act, which recognized the rights of nonrespondent parents in article 10 cases (see L 2015 Ch 567; Matter of Sapphire W., __ AD3d __, 2025 NY Slip Op 00662, *4 [2d Dept 2025]).