Matter of Kaius A. v Abigail H. (2025 NY Slip Op 04692)

Matter of Kaius A. v Abigail H.

2025 NY Slip Op 04692

Decided on August 14, 2025

Appellate Division, First Department

Rosado, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 14, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Sallie Manzanet-Daniels John R. Higgitt LlinÉt M. Rosado Marsha D. Michael

NN-18086-8/22|Docket No. NN-18086-8/22|Appeal No. 4229|Case No. 2024-04863|

[*1]In the Matter of Kaius A., And Others, Children Under Eighteen Years of Age, etc., Administration for Children's Services, Petitioner-Respondent,
v
Abigail H., Respondent-Appellant, Lashawn A., Respondent.

Respondent Abigail H. appeals from the order of disposition, Family Court, Bronx County (Lauren T. Broderick, J.), entered on or about April 10, 2024, to the extent it brings up for review a fact-finding order, same court and Justice, entered on or about March 29, 2024, which, after a hearing, found that she had neglected the three subject children.

Kenneth M. Tuccillo, Hastings on Hudson (Kenneth M. Tuccillo of counsel), for appellant.
Muriel Goode-Trufant, Corporation Counsel, New York (Susan Paulson and Melanie T. West of counsel), for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Andrew T. Ford and Holly Graham of counsel), attorney for the children.

Rosado, J. 

On or about December 1, 2022, the Administration for Children Services (ACS) filed an amended petition [FN1] naming the mother of the subject children as a respondent and alleging, among other things,[FN2] that the mother had neglected the subject children when she had an unidentified person leave them at the home of M.H., their paternal grandmother, without prior notice, without supplies and provisions for the children, and without any means of contacting her. As per the petition, because of this, on October 24, 2022, the children were remanded into ACS custody and placed into M.H.'s care. The petition further alleged that the mother claimed to have left the children with their father and paternal uncle despite being aware of a temporary order of protection (TOP) issued against the father for herself and the children.[FN3]
Fact-finding commenced on or about August 4, 2023. On that date, CPS worker Ms. Valerie Trazile was called by ACS to give testimony as to the events that gave rise to the neglect charges against the mother. As relevant to this matter, Trazile testified that on September 22, 2022, she dropped off the TOP at the shelter where the mother was residing with the children. A copy of the TOP was entered into evidence by ACS without objection. None of the parties entered a signed affidavit of service establishing service of the TOP upon the mother into evidence, nor did Family Court take judicial notice of such. Trazile further testified that on or about October 14, 2022, she received a call from the case planner, Ms. Elcox, who stated that she had been informed that the mother had left the children with M.H. According to Trazile, following her call with Ms. Elcox, she went to M.H.'s home and spoke with M.H, who explained that the mother had "somebody drop the kids to her house two days prior to me [Trazile] coming." Trazile testified that on October 27, 2022, she spoke with the mother, who repeatedly denied leaving the children, and asserted that she had arranged with the father for him to care for the children due to her hospitalization. The mother stated that she would provide Trazile with the name of the hospital she had been in, but she never did.[FN4]
On or about September 19, 2023, the mother filed an application pursuant to Family Ct Act § 1028 for the return of the children, and on December 4, 2023, Family Court combined the 1028 and fact-finding hearings. On that same date, M.H. testified that the children came into her care after her daughter-in-law was contacted by the eldest child's school that she needed to be picked up. According to M.H., she and her daughter-in-law picked up the children from their school and daycare, respectively, and brought them back to her home, where it is undisputed they have remained since that time. On cross-examination, M.H. testified, as relevant here, that she never asked the father (who was then residing with her and the children) if he knew where the mother was.
The mother made a motion to dismiss, arguing that M.H.'s testimony did not align with the account attributed to her in the amended petition in which she stated that an "unidentified person" left the children at her home. ACS objected to the mother's application but did not move to conform the pleadings to the proof, nor did the court sua sponte conform the pleadings to the proof at trial. The court subsequently denied the mother's application.
On or about December 13, 2023, the father testified on his own behalf regarding the allegations of the incident that occurred between him and the mother on September 20, 2022. ACS did not call the father as a witness to testify as to the allegations in the amended petition against the mother or to rebut the mother's testimony.[FN5]
The mother, whose testimony was given over the course of four court appearances,[FN6] maintained that contrary to the allegations in the amended petition, she had the father, and not an unknown individual, pick up the children to stay with him during her hospitalization. The mother testified that after experiencing an epileptic seizure, she made arrangements with the father, as she had numerous times before, for him to come with his brother to pick the children up from the shelter to stay with him until she was released from the hospital. It was her understanding that even though he lived with M.H., the father would be the person primarily responsible for the children's care during that time. She testified in great detail about the procedural steps she took to inform the shelter that she would be going to the hospital and that the children would be staying with the father in the interim. She emphasized the great care that she took to follow those steps to avoid losing the housing for herself and the children at the shelter and maintained that she informed her caseworker at the shelter as well as security at the shelter to keep them apprised of the situation.
The mother further asserted that when she asked the father if he needed anything for the children, he told her to pack the items she typically sent with the children to visit him, including clothing and diapers, which she did. She testified that she provided the father a copy of her food stamp card to use while the children were with him so that the father would be able to obtain provisions from the deli across the street from M.H.'s home by placing them on the mother's account at the deli. She further testified to being in contact with both the father and the shelter daily during her hospitalization and reached out to the father the day she was released from the hospital, informing him she was going to pick up the children the following day. The mother consistently asserted that she was never served with the TOP.
On March 13, 2024, well over a year after the commencement of this action,[FN7] Family Court issued its oral and written decision finding that the mother neglected the children.[FN8] While the decision addressed ACS's statutory duty to meet its burden of proof, Family Court nevertheless drew a negative inference against the mother for failing to provide ACS with her medical records from her hospital stay. In its decision, the court credited the testimonies of both Trazile and M.H. and found the mother's testimony uncredible and self-serving. Specifically, the court found that Trazile credibly testified that the children "were dropped off" at M.H.'s home and that M.H. credibly testified that the children "ended up at her house because nobody picked up [the eldest child] from school." The decision also included a restatement of the allegations in the amended petition, which, as relevant here, alleged that the mother "neglected the subject children in that the children were left with the paternal grandmother. . . ." (emphasis added). The court further noted that the mother did not dispute that she did not provide for the children while they were in M.H.'s care.
While the parties do not raise the issue of whether Family Court lacked subject matter jurisdiction, a court's lack of subject matter jurisdiction is not waivable, and we elect to address it now (see Matter of Brian L. v Administration for Children's Servs., 51 AD3d 488, 500 n 6 [1st Dept 2008], lv denied 11 NY3d 703 [2008]). The record demonstrates that after the court ordered the children to be remanded into ACS custody on October 24, 2022, ACS did not file the amended petition against the mother until over a month later. We find that by failing to timely file its petition against the mother within three court days of the removal order, ACS wrongfully detained the children (see Family Ct Act §§ 1021, 1022). Once the three-day filing window had elapsed without a pending petition before it, Family Court lacked subject matter jurisdiction to continue the children's temporary removal from the mother's care and placement with M.H. (see Matter of Jamie J. [Michelle E.C.], 30 NY3d 275, 283 [2017]; see also Matter of Johna M.S. v Russell E.S., 10 NY3d 364, 366 [2008] ["Family Court is a court of limited jurisdiction that cannot exercise powers beyond those granted to it by statute"]). The mother was further deprived of her due process rights to a timely hearing following the children's removal (see Matter of Elizabeth C. [Omar C.], 156 AD3d 193, 203-204 [2d Dept 2017] [failure to provide a parent with a prompt hearing following a child's removal may violate procedural due process]). Our recent decision Matter of R.C. [D.C.-R.R.] (— AD3d —, 2025 NY Slip Op 01859 [1st Dept 2025]) reiterated the impermissibility of "end-run[s] around the protections of article 10," and noted that these protections include a parent's right to notice of the claims against them.
The due process violations herein notwithstanding, we conclude that ACS failed to meet its burden of proof and establish by a preponderance of the evidence that the children were neglected by the mother (see Family Ct Act § 1046[b][i]). ACS's case in chief—in particular, its proffer of conflicting testimony elicited from its only two witnesses, Trazile and M.H.—does not prove the allegation in the amended complaint that the mother "had an unidentified person leave the subject children at [M.H.'s] home." Despite being put on notice of the discrepancy between the testimony elicited and the allegations in the petition, ACS neither moved to conform the pleadings to the proof nor to amend the petition. Even if ACS had moved to conform the pleadings to the proof or to amend the petition, doing so would still not have resolved Trazile and M.H.'s conflicting testimony. That testimony, without more corroborating evidence, does not establish by a preponderance of the evidence that the mother neglected the children (see Nicholson, 3 NY3d at 368; Matter of Anastasia G., 52 AD3d 830, 831-832 [2d Dept 2008]).
Further, ACS failed to rebut the mother's defense that she had made arrangements with the father in advance for the children to stay with him while she was hospitalized. Indeed, the record is silent as to any investigation or inquiry made by Trazile or ACS to confirm or rebut the mother's account beyond its elicitation of contradictory testimony from Trazile and M.H. ACS did not call the father to testify to rebut the mother's account of events (though he was presumably available to do so, as evinced by the fact that he testified on his own behalf in this matter), did not subpoena the mother's medical records, did not call Ms. Elcox to testify, and did not speak with or call to testify anyone from the mother's shelter. Nor did ACS establish through documentary or testimonial evidence that the mother was ever served with the TOP that they accuse her of violating. Trazile's testimony that she dropped the TOP off at the mother's shelter, without a corroborating signed affidavit of service, cannot sustain that allegation against the mother. Indeed, none of the documentary evidence submitted by ACS [FN9] proves its case or impeaches the mother's testimony.
Furthermore, ACS failed to adduce any proof of actual or imminent danger of physical, emotional, or mental impairment to the children [FN10] in remaining in a home with the father and M.H. during the mother's brief hospitalization (see Nicholson, 3 NY3d at 368; Jayvien E. [Marisol T.], 70 AD3d at 436). Indeed, ACS's allegation that the children were in imminent risk of harm is belied by the fact that ACS did not file against the mother for at least 50 days after the children came to M.H.'s home. The record is silent as to any efforts or good faith investigations made by ACS to meet its burden of proof regarding the allegations that resulted in the removal of three children from their mother's care. In short, the evidence presented falls woefully short of the standard of proof required to make a finding of neglect (see Jamie J. [Michelle E.C.], 30 NY3d at 284 ["Neglect findings cannot be casually issued, but require proof of actual or imminent harm to the child as a result of a parent's failure to exercise a minimum degree of care"]).
We further find that Family Court unduly relied upon the contradictory testimony of Trazile and M.H. in rendering its determination that respondent neglected the children. While credibility determinations of Family Court are normally accorded due deference (see Matter of Everett C. v Oneida P., 61 AD3d 489, 489 [1st Dept 2009]), the determination here "lacks a sound and substantial evidentiary basis," and the court should have dismissed the petition (see id., see also Family Ct Act § 1051[c]). The court credited the testimonies of both Trazile and M.H., which together presented three markedly different and contradictory accounts of how the children came to be in M.H.'s care.[FN11] Significantly, all three accounts are departures from the allegations set forth in the amended petition.
While the court is empowered sua sponte to conform the pleadings to the proof, as it arguably did here via its restatement of the allegations in its written decision, Family Ct Act § 1051(b) requires that in such cases, the respondent be given reasonable time to prepare to answer the amended allegations, which was not done here (see Matter of Shawniece E., 110 AD2d 900, 901 [2d Dept 1985]; Matter of Vallery P. [Jondalla P.], 106 AD3d 575, 575 [1st Dept 2013]; Matter of Richard S. [Lacey P.], 130 AD3d 630, 632-633 [2d Dept 2015], lv denied 26 NY3d 906 [2015]). "Absent additional allegations set forth in an amended petition that conforms to the proof with notice to the respondent, the court must not base a finding of neglect on allegations not set forth in the petition" (Matter of Elina M., 236 AD3d 25, 26 [2d Dept 2024]). Accordingly, we find that the court improperly relied on evidence relating to how the children came into M.H.'s care even though the petition did not include allegations about that evidence (id.). Further, as stated earlier herein, the only evidence proffered by ACS either presents contradictory accounts of what events occurred or is uncorroborated. In this Court's estimation, the mother's testimony is the only uncontroverted account in the record of how the children came to be in M.H.'s care and why.
Family Court's finding that the mother "did not dispute that she did not provide for the children while in the care of [M.H.]" is directly at odds with the uncontroverted testimony given by the mother, who asserted that she sent the children with clothing and diapers, provided the father with a copy of her food stamp card, and arranged for supplies to be obtained for the children from the deli across the street from M.H.'s home.
Accordingly, the order of disposition, Family Court, Bronx County (Lauren T. Broderick, J.), entered on or about April 10, 2024, to the extent it brings up for review a fact-finding order, same court and Justice, entered on or about March 29, 2024, which, after a hearing, found that respondent mother neglected the three subject children, should be reversed, on the law and the facts, without costs, the finding of neglect vacated, the petition dismissed, and this order stayed for 30 days following entry of the order so the parties may arrange for and take any other appropriate steps to ensure an orderly transition for the children.
Order of disposition, Family Court, Bronx County (Lauren T. Broderick, J.), entered on or about April 10, 2024, to the extent it brings up for review a fact-finding order, same court and Justice, entered on or about March 29, 2024, which, after a hearing, found that respondent mother neglected the three subject children, reversed, on the law and the facts, without costs, the finding of neglect vacated, the petition dismissed.
Opinion by Rosado, J. All concur.
Renwick, P.J., Manzanet-Daniels, Higgitt, Rosado, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 14, 2025

Footnotes

Footnote 1: By three separate petitions dated September 20, 2022, ACS alleged, among other things, that the father neglected the subject children by engaging in domestic violence against the mother in the children's presence on several occasions. By the same order being appealed by the mother in this matter, the court dismissed the petitions against the father, along with the order of protection issued against him on behalf of the mother and children. The September 20, 2022 petition did not contain any allegations against the mother.
Footnote 2: The amended petition also included allegations that the mother suffered from untreated mental health disorders which put the children in imminent risk of harm.

Footnote 3: The TOP was issued on September 20, 2022. The TOP, among other things, ordered the father to stay away from the mother and children, save for court-ordered supervised visitation. Of note, a second order of protection with substantially the same terms as the TOP was issued by the court on October 24, 2022, even though at the time of its issuance, it was acknowledged by Family Court and ACS that the father was residing in M.H.'s home with the children. ACS declined to bring additional claims against the father in connection with his continuous violations of the October 24, 2022 order of protection. Despite this Court's reluctance to further punish abused parties for their failure to adhere to the terms of orders of protection, it appears that ACS took issue only with the mother's alleged violation of the TOP, which was issued, in part, for her protection as result of the father's alleged acts of domestic violence against her (see Matter of R.C., — AD3d &mdash, 2025 NY Slip Op 01859, *1 n 2 [1st Dept 2025], quoting Nicholson v Scoppetta, 3 NY3d 357, 375 [2004]). Nicholson held, among other things, that a child's exposure to domestic violence is not presumptively neglect as against the abused parent, is not presumptively grounds for removal of a child from the abused parent's care, and that "in many instances removal may do more harm to the child than good" (3 NY3d at 375).

Footnote 4: The record is silent as to whether Trazile ever inquired of the father, who was living at M.H.'s home on October 24, 2022 and for months thereafter, about the mother's assertions that she had arranged to have the children stay with him while she was hospitalized. The record is also silent as to whether Trazile ever made attempts to contact the father's brother, who the mother asserted was present when the father picked the children up from the shelter.

Footnote 5: While the father testified prior to the mother, ACS was already aware at the time of the father's testimony of the mother's denial of the allegations, as they were included in the amended petition that ACS filed against the mother. Nevertheless, ACS elected not to recall the father to give testimony regarding any knowledge of the events that resulted in the children ending up in M.H.'s care nor to rebut the mother's defense generally.
Footnote 6: The mother testified on January 18, 2024, February 9, 2024, February 14, 2024, and March 13, 2024.

Footnote 7: As of the date of this decision, the children have been separated from their mother for over two years.
Footnote 8: In that same fact-finding order, Family Court found that ACS failed to prove that the father neglected his children by engaging in acts of domestic violence in the presence of the children. This Court is perplexed that ACS did not recall the alleged victim here, the mother, as a witness to testify as to allegations that gave rise to the neglect petitions filed against the father concerning domestic violence perpetrated against her.In that same order, Family Court further held that ACS did not meet its burden of demonstrating that the mother neglected her children vis-À-vis her allegedly untreated mental illness. Specifically, citing Matter of Jayvien E. [Marisol T.] (70 AD3d 430 [1st Dept 2010]), Family Court opined that ACS presented no evidence of the mother's diagnoses, her failure to treat her mental illnesses, or how that impaired the children's physical, mental, or emotional condition, or placed them in imminent danger of being impaired.

Footnote 9: The fact-finding order noted that ACS submitted only the following documentation into evidence: the order of fact-finding and disposition as to the father dated August 13, 2019, the release order issued on September 20, 2022, and the TOP.
Footnote 10: The attorney for the children did not put on a case in this matter or proffer evidence or witnesses establishing alleged harm.

Footnote 11: Even if the hearsay statements of Ms. Elcox recounted by Trazile in her testimony were deemed sufficiently relevant and probative, that still would not cure the issue that the account attributed to Ms. Elcox does not comport with the accounts given by Trazile or M.H.